UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT ) | |
| OPPORTUNITY COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:04-0882 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| LUCENT TECHNOLOGIES, INC., ) | |
| ) | |
| Defendant. ) | |

### MEMORANDUM

Pending before the court is the Motion for Summary Judgment filed by the defendant, Lucent Technologies, Inc. (Docket No. 33), to which the plaintiff, the Equal Employment Opportunity Commission, has responded (Docket No. 37), and the defendant has replied (Docket No. 49). For the reasons discussed herein, the defendant's motion will be granted.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 1987, John Primm, an African-American male, was hired as a communications installer at AT&T.[1] In 1996, Lucent Technologies, Inc. ("Lucent") took over the relevant portions of AT&T's business, and Primm began working in the same position for Lucent. He worked in that position until August 1997, at which time he was promoted to operations

---

[1] Unless otherwise noted, all facts have been drawn from the plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Docket No. 38), its Response to Defendant's Statement of Undisputed Facts (Docket No. 39), and its Statement of Material Facts in Dispute (Docket No. 40).

1

supervisor ("OS"), which carried with it an MA5 rank.  As an OS, Primm was responsible for overseeing approximately 16 installers.  He was, at that time and throughout his subsequent tenure with Lucent, the only African-American OS in Tennessee.  Primm's direct supervisor in this position was Richard Atchley, a white male who worked in the Nashville office as an operations area manager.

In 2003, due to deteriorating financial conditions, Lucent opted to reduce its U.S. workforce from approximately 135,000 employees to approximately 35,000.  Reductions at Lucent often began at the installer level.  A reduction in the level of installers generally resulted in the need to reduce the number of OS's, as fewer supervisors were needed to oversee a reduced number of installers. A reduction in OS's, who qualified as management personnel, was accomplished via a process known as the Force Management Program ("FMP").

During the 2003 FMP reduction, Lucent's upper management determined how many OS positions needed to be eliminated in order to maintain an effective ratio of installers to management.  They then communicated this number through the corporation's hierarchy.  Each operations director was responsible for terminating a particular number of OS's.  The operations directors, in turn, worked with their operations area managers in order to effectuate the terminations.  Each area manager was asked to rate the skills of all of the OS's under his supervision on a scale of 1-3, where a higher score indicated a lower level of success.      The FMP reduction at issue in this case was targeted at the MA5 OS's under Atchley's supervision.  At the time of the reduction, Atchley supervised two such OS's: Primm and Samuel Colbert, a white male.  On November 20, 2003, Atchley met with these men, as well as with Kimberly

2

Guinn,[2] a white female who worked as an MA5 Installation Sales Representative ("ISR"),[3] and informed them of the pending FMP. During this meeting, both Colbert and Guinn volunteered to "take back their tools," *i.e.*, to accept a demotion. While Primm understood them to have made this offer in order to prevent the FMP from taking place, both Colbert and Guinn have asserted that they did not volunteer to take demotions to head off the FMP, but rather expressed their willingness to accept a demotion, in lieu of being terminated, should their position be the one selected for FMP elimination. (*See* Docket No. 48, attach. Kimberly Guinn Dep. at 20; *id.*, attach. Sam Colbert Dep. at 13) Later that day, Atchley approached Primm and asked him if he, too, would be willing to "take back his tools." Primm responded in the negative and indicated that, if terminated, he would open his own business.

Pursuant to the FMP directive to operations area managers, Atchley submitted to Operations Director James Gilliam the year-end evaluations that Atchley had completed for each of his employees. These evaluations were in the form of "skills matrixes" and contained numerical assessments of each employee's abilities, as well as his or her ranking respective to the other employees. (*See* Docket No. 48, attach. Richard Atchley Dep. at 55 ("The only thing I sent was the skills matrix, which had the ratings numbers and the skill numbers.")) Although it did not indicate poor performance, Primm's evaluation was the worst among the MA5 employees under Atchley's supervision. Gilliam agreed with Primm's assessment of Atchley as

---

[2]Kimberly Guinn's maiden name is Kimberly Pelleaux. Her maiden name appears at various places in the record but, for the purposes of consistency, she will be referred to here as Kimberly Guinn.

[3]Prior to assuming the ISR position in 2002, Guinn had worked as an MA5 OS, a position to which Atchley had promoted her.

the weakest MA5 employee. Gilliam forwarded the skills matrixes to Resource Manager Melinda Boxdorfer, who inputted Atchley's ratings into a spreadsheet and identified Primm as the employee who would be terminated in accordance with the FMP. On December 18, 2003, Primm was fired. Guinn and Stephen Letson, a MA3 OS, assumed responsibility for Primm's duties in his absence. (*See* Docket No. 48, attach. Kimberly Guinn Dep. at 25) Guinn later moved from her position as an MA5 ISR to one as an MA5 OS.

Primm filed his charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 31, 2003. The EEOC brings the instant suit on his behalf.

## ANALYSIS

**I.     Summary Judgment Standard**

The defendant has moved for summary judgment on the plaintiff's claim that Primm was the victim of discriminatory termination. Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met its burden, the court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving

4

party. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to determine whether there is a genuine issue for trial.'" *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 551 (6th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which she has the burden, however, the moving party is entitled to summary judgment as a matter of law. *See Williams v. Ford Motor Co.*, 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Shah v. Racetrac Petroleum Co.*, 338 F.3d 557, 566 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. *Anderson*, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Hill v. White*, 190 F.3d 427, 430 (6th Cir. 1999) (citing *Anderson*, 477 U.S. at 247-49). With this standard in mind, the court turns to an analysis of the plaintiff's claim.

5

## II. The Defendant is Entitled to Judgment as a Matter of Law on the Plaintiff's Discrimination Claim

In analyzing the plaintiff's claim that Primm was subjected to impermissible discrimination on the basis of his race, the court must employ the *McDonnell Douglas* approach, which first requires a plaintiff to establish a *prima facie* case of discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Clayton v. Meijer, Inc.*, 281 F.3d 605, 610 (6th Cir. 2002) (citing *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246–47 (6th Cir. 1995)). To establish a prima facie case of race discrimination under Title VII, a plaintiff must demonstrate that (1) he is a member of a protected class; (2) he suffered an adverse action; (3) he was qualified for the position; and (4) he was replaced by someone outside the protected class or was treated differently from similarly situated non-protected employees. *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 729 (6th Cir. 1999).

Once a plaintiff demonstrates his *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse action, after which the plaintiff must demonstrate that the proffered reason was a mere pretext for what was actually an improper motive. *See Abbott*, 348 F.3d at 542; *Williams v. Nashville Network*, 132 F.3d 1123, 1131 (6th Cir. 1997).

### A. Any substantive discussion of whether Primm was subjected to an FMP reduction would be inappOsite

The parties disagree as to whether Primm's position as an MA5 OS was eliminated as the result of an FMP reduction or whether he was terminated and then replaced by Guinn, who had been working as an MA5 ISR. The distinction between these two scenarios is an important one because, if an employee was terminated as part of a reduction-in-force ("RIF"), such as is the

6

case with an FMP reduction, he must produce "additional direct, circumstantial, or statistical evidence that . . . race was a factor in his termination" as part of his *prima facie* case. *Williams v. Tyco Elec. Corp.*, No. 04-5043, 2006 WL 13105, at *6 (6th Cir. Jan. 3, 2006) (unpublished) (citing *LaGrant v. Gulf & W. Mfg. Co.*, 748 F.2d 1087, 1091 (6th Cir. 1984)); *see also Gragg v. Somerset Technical Coll.*, 373 F.3d 763, 767-68 (6th Cir. 2004) ("The analysis differs [from traditional *McDonnell Douglas* analysis] in cases . . . that involve a reduction-in-force.") (internal quotations omitted).

An employee is not terminated as a result of a RIF if he is replaced after his discharge. *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). An employee is not replaced, however, "where another employee is assigned to perform the plaintiff's duties in addition to other duties or when the work is redistributed among other existing employees already performing related work." *Id.*; *see also Grosjean v. First Energy Corp.*, 349 F.3d 332, 336 (6th Cir. 2003) (quoting *Barnes*, 896 F.2d at 1465).

It is apparent from the record that Guinn took up at least some of Primm's duties on December 18, 2003, the same day that he was terminated. (*See* Docket No. 41, attach. Samuel Colbert Dep. at 19 ("Rick [Atchley] just said [at a December 18, 2003 meeting] that Kim would be taking over for John."); Docket No. 36, attach. Richard Atchley Dep. at 62 ("I informed Kimberly that she would probably have to pick up the slack.")) Additionally, Guinn has acknowledged that she ceased at least some of her ISR duties soon after Primm was fired. (*See* Docket No. 48, attach. Kimberly Guinn Dep. at 28 ("I would probably say in January I stopped making calls . . . ."))

The defendant has presented uncontroverted evidence, however, that Guinn shared

7

responsibility for Primm's former duties with Stephen Letson, an MA3 OS. (*See id.* at 25 ("Stephen and I both . . . tried to help out with what John had been handling.")) Additionally, Guinn has testified that she did not move immediately into an OS position, but rather continued with some of her ISR duties for a least a few months after Primm's termination. (*See id.* at 26 ("I began doing both functions. And I would probably say in the spring of the following year [2004] is when I stopped doing the ISR function.")) She apparently ceased doing ISR duties only after she complained to her supervisor, Lynn Koester, that she could not perform the tasks of both that position and the OS one. (*See id.* at 27)

Any search for a genuine issue of material fact as to whether Guinn replaced Primm or whether he was terminated subject to an FMP reduction is unnecessary. Even if the plaintiff could demonstrate such a replacement, thereby eliminating the need to meet the heightened *prima facie* requirement that accompanies terminations by RIF, it has–as explained below–failed to offer any convincing evidence to demonstrate that the defendant's legitimate, nondiscriminatory reason for terminating Primm was mere pretext for discrimination. Accordingly, even assuming, *arguendo*, that the plaintiff were able to establish a *prima facie* case of discriminatory termination, this failure renders the defendant entitled to judgment as a matter of law.

### B. The defendant has offered a legitimate, nondiscriminatory reason for Primm's termination

For the purposes of offering a legitimate, nondiscriminatory reason for its termination of Primm, the defendant has alleged that, "due to deteriorating financial conditions, Lucent was forced to reduce its installation management workforce in Nashville." (*See* Docket No. 34 at 13) According to the defendant, it objectively rated each of the individuals who worked as MA5

8

OS's under Richard Atchley's supervision and determined that Primm's skills "were not as favorable to Lucent management as those of the remaining MA5 operations supervisors in Nashville." (*See id.* at 13-14) With the proffer of this explanation, the defendant has met its burden at this stage of the *McDonnell Douglas* analysis. *See Brune v. BASF Corp.*, No. 99-3194, 2000 WL 1597908, at *3 (6th Cir. Oct. 17, 2000) (unpublished) (recognizing a "RIF situation" as a legitimate reason for the discharge of an employee). Accordingly, the onus now shifts to the plaintiff to demonstrate that the defendant's asserted reason for Primm's termination was mere pretext for discrimination. *See Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

**C.	The plaintiff has not demonstrated that the defendant's legitimate, nondiscriminatory reason for Primm's discharge is mere pretext for discrimination**

To demonstrate that an employer's explanation for an employee's termination is pretextual, a plaintiff must show, by a preponderance of the evidence, one of the following: (1) that the proffered reasons had no basis in fact; (2) that the reasons did not actually motivate the employer's actions; or (3) that the reasons were insufficient to motivate the employer's actions. *Manzer v. Diamond Shamrock Chemicals*, 29 F.3d 1078, 1084 (6th Cir. 1994). "[Claiming] by a blanket denial that the employer's articulated reasons for [taking an adverse action against an employee] . . . were incorrect . . . is not enough; a plaintiff must take the extra step of presenting evidence to show that the reasons given are an attempt to cover up the employer's alleged real discriminatory motive." *Irvin v. Airco Carbide*, 837 F.2d 724, 726 (6th Cir. 1987). If the plaintiff demonstrates that the defendant's proffered, nondiscriminatory reason is a pretext, then the fact finder may infer unlawful retaliation. *See Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 345-46 (6th Cir. 1997).

9

Here, the plaintiff appears to attempt the first and second showings suggested in *Manzer*. The first showing is "easily recognizable and consists of evidence that the proffered bases for the plaintiff's discharge never happened, *i.e.*, that they are factually false." *Manzer*, 29 F.3d at 1084 (internal quotations omitted). The second method of demonstrating pretext "is of an entirely different ilk." *Id.* There, "the plaintiff, while conceding the truth of the defendant's facts and even admitting that such facts otherwise allow for the adverse action, argues that the proffered reason was not the motivating factor in the defendant's decision." *Williams v. Tyco Elec. Corp.*, No. 04-5043, 2006 WL 13105, at *5 (6th Cir. Jan. 3, 2006).

In attempting the first of the *Manzer* showings, the plaintiff claims that the defendant's bases for firing Primm were factually false. Specifically, it asserts that an FMP reduction was never in effect with respect to the MA5 OS position, as well as that Primm was not definitively the lowest ranked among the OS's who were subject to the FMP reduction because the defendant used an improper method of evaluating them. In claiming that no FMP existed among the MA5 OS's, the plaintiff recognizes that the defendant needed to reduce its workforce in order to remain commercially viable, but alleges that the ISR position, rather than the OS one, was eliminated due to the FMP reduction. To further this claim, the plaintiff asserts that Kimberly Guinn took over the primary functions of Primm's OS position soon after he was terminated.[4] It

---

[4]The plaintiff asserts that Atchley's 2002 transfer of Guinn into a "protected position" as an ISR is "suspect" because that position was not in danger of being eliminated via FMP reduction. (*See* Docket No. 38 at 10) Atchley did not choose to create the ISR position, however, nor did he appear to know that it would be protected from the subsequent FMP. (*See* Docket No. 36, attach. Richard Atchley Dep. at 32 ("[Guinn] was an MA5 supervisor in my eyes, the same as the other people"), *id.* at 33 (indicating that he had been unaware that Guinn's position would be safe from the FMP reduction); Docket No. 38 at 5 (indicating that Gilliam told Atchley that the ISR position was to be created); *see also* Docket No. 49 at 5-6) Accordingly, Atchley's transfer of Guinn from her former position as an OS to one as an ISR does not indicate

10

also notes that her ISR position eventually was eliminated altogether.

The plaintiff has recognized, however, that Atchley received a directive from his superiors to "reduce the number of MA5 operations supervisors in Nashville by one." (*See* Docket No. 39 ¶ 19 (responding to defendant's statement of this fact by noting that it did not dispute it)) Additionally, although Guinn ultimately took over OS duties full-time, the plaintiff has not shown that she did so as Primm's replacement, such as would contradict the defendant's claims that an FMP reduction was in effect. Rather, the fact that Guinn and Letson jointly assumed Primm's duties and the fact that Guinn did not leave her ISR position until months after Primm had been terminated mitigate against the existence of any genuine issue as to whether Guinn moved immediately into Primm's place.

This conclusion is supported by evidence that Guinn moved into the OS position following the FMP reduction because she found herself unable to handle both ISR and OS tasks and because the ISR position was ultimately eliminated as part of a nationwide corporate plan. *See Williams*, 2006 WL 13105, at \*7 (recognizing that evidence that a new employee was hired to fill a position similar to one vacated because of a RIF does not demonstrate that the RIF never existed, if the new employee was hired due to "changed circumstances that did not exist at the time [the original employee] was terminated"); (*see also* Docket No. 48, attach. Kimberly Guinn Dep. at 26 ("that position . . . went away everywhere"); Docket No. 41 attach. Charles Simmons Dep. at 31-32 (noting that the ISR positions were eliminated altogether in favor of another concept in "mid-2004")). Accordingly, the plaintiff's assertions are insufficient to demonstrate,

---

that he was, as the plaintiff asserts, attempting to leave Primm open to layoff, while protecting his white colleague.

11

by a preponderance of the evidence, that the FMP reduction was actually targeted at the ISR position, rather than the OS one.

The plaintiff's argument that Primm, in fact, was not the lowest ranked among the employees subject to the FMP reduction similarly must fail. The defendant has presented clear evidence that Primm received a worse score on his evaluation than did Sam Colbert, who, as the only other MA5 OS under Atchley's supervision, was the only person besides Primm who faced termination under the FMP reduction. (*See* Docket No. 48, attach. Melinda Boxdorfer Aff. ¶ 4; *see also* Docket No. 36, Ex. A, Operations Staff Skill Set (indicating that Colbert received a total score of 1.8, while the plaintiff scored a 2.0, where a lower score indicated superior performance))

The plaintiff asserts that Atchley used subjective, rather than objective, criteria to arrive at these ratings and that he submitted, as part of the FMP process, information from his employees' year-end evaluations when he should not have. The defendant has presented evidence, however, that, although Atchley may have used the evaluations to rank the employees who were subject to the FMP reduction, these evaluations were, in fact, "skills matrixes" that rated employees on both objective and subjective elements. (*See* Docket No. 47 ¶ 24)

Even if Atchley was wrong to submit his year-end evaluations as evidence of his employees' rankings (a fact that the plaintiff has not clearly established), it is not the court's place to second-guess the defendant's business practices, absent some proof that this method of rating employees is illegal. *See Smith v. Leggett Wire Co.*, 220 F.3d 752, 763 (6th Cir. 2000) (finding that "it is inappropriate for the judiciary to substitute its judgment for that of management"); *see also White v. Columbus Metro Hous. Auth.*, 429 F.3d 232, 246 (6th Cir.

12

2005) (finding that "an employer's failure to follow self-imposed regulations or procedures is generally insufficient to support a finding of pretext"). The plaintiff has provided no evidence that the rating system that Atchley used in rating Primm's performance was legally impermissible. Thus, the plaintiff has failed to demonstrate that Primm's lower ranking was factually false and, therefore, evidence of pretext.

The plaintiff appears to base its final claim of pretext on *Manzer's* second methodology. Specifically, it alleges that, even if Atchley had been instructed to eliminate by FMP reduction one MA5 OS, a desire "to terminate the only [b]lack operations supervisor" is, instead, what motivated the defendant to fire Primm, rather than Colbert. (*See* Docket No. 38 at 13) As evidence of the defendant's alleged desire, the plaintiff asserts that Atchley could have avoided the FMP altogether by accepting the offers of Guinn and Colbert to take demotions in order to prevent the FMP from taking place.[5] (*See* Docket No. 41, attach. John Primm Dep. at 55-56) Guinn and Colbert both assert that they did not volunteer to take demotions to head off the FMP, but rather expressed their willingness to accept a demotion, in lieu of being terminated, should their position have been the one selected for FMP elimination. (*See* Docket No. 48, attach. Kimberly Guinn Dep. at 20 ("I did not volunteer to take my tools back. What I said is, if I were chosen and that was an option, that would be my choice, to take my tools back."); *id.* attach. Sam

---

[5]The plaintiff also claims that, after the FMP was announced, a number of Primm's superiors asked him to consider accepting a demotion. It asserts that such comments were part of a "campaign" to remove him. (*See* Docket No. 38 at 12) The defendant has countered these allegations with Atchley's assertion that, at the time he and others approached Primm, Atchley was aware that Primm was likely to be the target of the FMP and was trying to avoid losing Primm as an employee. (*See* Docket No. 47 at 5) The plaintiff has not called this explanation into question and, accordingly, has not demonstrated a "campaign" to remove Primm, such as might be indicative of pretext.

13

Colbert Dep. at 13 ("whose ever job would be eliminated . . . if they had . . . expressed an interest in being an installer again, that would be an option at that time"))

At this stage of the proceedings, the court must accept the plaintiff's version of the facts. Even assuming, however, that Guinn and Colbert volunteered for demotions, Atchley's refusal to accept these offers does not demonstrate pretext. The plaintiff has not provided any evidence that Atchley definitively had the authority to prevent the FMP in this manner. (*See* Docket No. 41 at 56, attach. John Primm Dep. at 56 (asserting that Atchley said accepting an offer of a demotion *might* eliminate the need to lay anyone off, but noting that he was unaware whether such actions would definitely lead to such a result)) Additionally, the defendant has presented evidence that, at the time Guinn and Colbert expressed their alleged willingness to accept demotions, Atchley knew from his completion of the year-end evaluations that Primm was ranked lower than were those employees. (*See* Docket No. 47 ¶ 5) It is not the court's role, therefore, to question the defendant's decision to retain the employees whom it knew were most valuable to it. *See Smith*, 220 F.3d at 763.

Thus, the plaintiff has failed to establish that the defendant's proffered legitimate, nondiscriminatory reason for terminating Primm was not, in fact, the motivating factor for its decision but, instead, was mere pretext for impermissible discrimination. Accordingly, its discrimination claim must fail.

14

## CONCLUSION

The plaintiff has failed to offer evidence that would allow a reasonable jury to conclude that Primm has been subjected to race-based discriminatory termination. Thus, the defendant's motion for summary judgment on this claim will be granted.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

15